1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH BAUDER,

                           Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                         Defendant.

No.  C05-708Z

ORDER

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Monica J. Benton (the "R&R"), docket no. 23, and the Plaintiff's Objections thereto, docket no. 26.  The Court ADOPTS IN PART and DENIES IN PART the R&R, and REMANDS the case for further consideration on an expedited basis, in accordance with this Order.

## I.    BACKGROUND

Plaintiff Deborah Bauder alleges that she has been unable to work since July 31, 1996.  Compl., docket no. 1, ¶ 6.  Ms. Bauder suffers from systemic lupus erythematosus, asthma, sleep apnea, obesity, depression, and anxiety.  Tr. 540, 546.  On August 5, 1996, Ms. Bauder filed an application for disability insurance benefits.  Tr. 113-16; 118-25.  On February 20, 1999, Administrative Law Judge ("ALJ") John F. Bauer denied Ms. Bauder benefits.  Tr. 13-28.  Pursuant to a stipulation of the parties, on January 22, 2001, this Court

ORDER  1–

remanded the case and ordered the ALJ to consider the opinions of Drs. Phillip Mease and Steven Overman, to determine whether lupus was a severe impairment, to consider Plaintiff's residual functional capacity, and to develop the evidence regarding Plaintiff's past relevant work.  Tr. 569-70 (C00-1368, docket no. 11).  On remand, on November 29, 2001, ALJ Bauer again denied Plaintiff benefits.  Tr. 547-64.  On November 4, 2002, the Appeals Council remanded the case for a new hearing and further development of the record.  Tr 565-68.

After another hearing, on October 2, 2003, ALJ Arnold Battise denied Ms. Bauder benefits on the grounds that she could perform her part-time past relevant work as a research assistant.  Tr. 525-546.  Ms. Bauder worked as a research assistant when she was a graduate student at the University of South Carolina; her basic duties, as she described them: "used computer to analyze data and complete computer model.  Complete library research.  Write report of findings and outcomes.  Technical knowledge of psychology, expertise, skill acquisition, computer programming."  Tr. 130.  On February 23, 2005, the Appeals Council declined review, Tr. 432-35, leaving ALJ Battise's decision as the final decision of the Commissioner of the Social Security Administration (the "Commissioner").  See 20 C.F.R. § 404.984 (b)(2).

Ms. Bauder seeks judicial review of ALJ Battise's October 2, 2003 decision pursuant to 42 U.S.C. § 405(g).  Ms. Bauder argues that ALJ Battise erred by finding at Step 4 that she could return to her part-time past relevant work as a research assistant.  She further argues that benefits should be paid outright either at Step 3 or Step 5 or, at a minimum, that her denial should be reversed and remanded for a fourth hearing.

Judge Benton has recommended that the Commissioner's decision be affirmed.  Report and Recommendation ("R&R"), docket no. 23.  Ms. Bauder has filed objections to the R&R.  Pl.'s Obj., docket no. 26.  The Commissioner has filed a response to those

ORDER  2–

1   objections.  Def.'s Resp., docket no. 27.  Ms. Bauder has filed a reply to the Commissioner's

2   response.  Pl.'s Reply, docket no. 29.

3   **II.   DISCUSSION**
    **A.   Standard of Review**

4

5       Under the Social Security Act, the Court "shall have power to enter, upon the

6   pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

7   decision of the Commissioner of Social Security, with or without remanding the cause for a

8   rehearing." 42 U.S.C. § 405(g).  "The findings of the Commissioner of Social Security as to

9   any fact, if supported by substantial evidence, shall be conclusive."  Id.; see also Batson v.

10  Commissioner, 359 F.3d 1190, 1193 (9th Cir. 2004) ("The Commissioner's decision must be

11  affirmed by us if supported by substantial evidence, and if the Commissioner applied the

12  correct legal standards.").  "Substantial evidence" means "more than a mere scintilla but not

13  necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).

14  Under this substantial evidence standard, "the Commissioner's findings are upheld if

15  supported by inferences reasonably drawn from the record, and if evidence exists to support

16  more than one rational interpretation, we must defer to the Commissioner's decision."

17  Batson, 359 F.3d at 1193 (internal citations omitted).

18      Under the rules that guide the Court's review of a magistrate's report and

19  recommendation and a party's objections thereto, the Court "shall make a de novo

20  determination of those portions of the report or specified proposed findings or

21  recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also FED. R. CIV.

22  P. 72(b); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004).  The Court "may accept,

23  reject, or modify, in whole or in part, the findings or recommendations made by the

24  magistrate judge."  28 U.S.C. § 636(b)(1).

25

26

ORDER   3–

B.    **Applicable Law**

The Social Security Act authorizes the payment of disability insurance benefits to a person who is "under a disability."  42 U.S.C. § 423(a)(1)(E).  "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 416(i)(1).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).  "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B).

There is a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  See 20 C.F.R. § 404.1520.  The burden of proof is on the claimant as to steps one to four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  As to step five, the burden shifts to the Commissioner.  Id.  If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps.  Id.

ORDER  4–

The five steps are:

Step 1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is 'not disabled' within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

Step 2.  Is the claimant's impairment severe?  If not, then the claimant is 'not disabled' and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

Step 3.  Does the impairment 'meet or equal' one of a list of specific impairments described in the regulations?  If so, the claimant is 'disabled' and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

Step 4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is 'not disabled' and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

Step 5.  Is the claimant able to do any other work?  If not, then the claimant is 'disabled' and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.

Id. at 1098-99; see 20 C.F.R. § 404.1520(a)-(g); Tr. 529.

**C.    Plaintiff's Objections**

**1.    ALJ Battise's Finding No. 4 Regarding Step 3**

ALJ Battise's Finding No. 4, which corresponds to Step 3, states: "These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4."  Tr. 545; see also Tr. 540-41.  The R&R adequately explains how ALJ Battise supported his Finding No. 4 regarding Step 3 with substantial evidence.  Plaintiff's Objections assert that Judge Benton went beyond the analysis of ALJ Battise, see Pl.'s Obj. at 9, but Plaintiff fails to identify any particular evidence considered by Judge Benton that was not considered by ALJ Battise.  Plaintiff's

ORDER  5–

Objections also assert that "each and every treatment provider and evaluator demonstrated that Plaintiff at a minimum *equaled* a Listing even if she did not *meet* the specific requirements of the Lupus Listing" and cites the regulatory requirements for medical equivalence.  Pl.'s Obj. at 7-8 (emphasis added).  The R&R expressly does "not address whether Plaintiff 'equaled' a listing as described in 20 C.F.R. § 404.1526 because Plaintiff did not offer a plausible theory or point to supporting evidence to demonstrate equivalency."  R&R at 6 n.1 (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); and Tackett, 180 F.3d at 1099).  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."  Burch, 400 F.3d at 683.  The only evidence cited to by Plaintiffs is Dr. Myers affirmation that Ms. Bauder's "conditions as a group . . . meet or equal any . . . listing of impairment."  Tr. 986.  This is a bare conclusion and does not offer a plausible theory as to equivalency.

For the reasons outlined in the R&R, at pages 6-12, the Court ADOPTS the R&R's recommendation to uphold ALJ Battise's Finding No. 4 regarding Step 3.

## 2.   ALJ Battise's Finding No. 5 Regarding Credibility

ALJ Battise's Finding No. 5 "finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision."  Tr. 545.  For the reasons outlined in the R&R, at pages 5-6, the Court ADOPTS the R&R's recommendation to uphold ALJ Battise's Finding No. 5 regarding credibility.

## 3.   ALJ Battise's Finding Nos. 7-10 Regarding Step 4

The question under Step 4 is whether the claimant is able to do any work that she has done in the past.  ALJ Battise's Finding Nos. 7-10, which correspond to Step 4, state:

> Finding No. 7.  The claimant has the following residual functional capacity: the claimant could lift twenty pounds occasionally.  She would need to rest for an hour in

ORDER  6–

an eight hour day outside of her regular break periods.  She would work better away from the general public.

Finding No. 8.  The claimant's past relevant work as research assistant did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 404.1565).

Finding No. 9.  The claimant's medically determinable systemic lupus erythematosus, asthma, sleep apnea, obesity, depression and anxiety do not prevent the claimant from performing her past relevant work.

Finding No. 10.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 404.1520(e)).

Tr. 545-46.  As previously noted, under Step 4, if the claimant is able to do any work that he or she has done in the past, then the claimant is not disabled and is not entitled to disability insurance benefits.  See 20 C.F.R. § 404.1520(f) (claimant's residual functional capacity is compared with the physical and mental demands of past relevant work).  Alternatively, if the claimant cannot do any work she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.  Tackett, 180 F.3d at 1099. Because ALJ Battise finds that Ms. Bauder's impairments do not prevent her from performing her past relevant work as a research assistant, ALJ Battise's findings stop at Step 4 and he does not proceed to Step 5.

### a.    **Residual Functional Capacity**

Ms. Bauder asserts that ALJ Battise erred in his Finding No. 7 regarding Ms. Bauder's residual functional capacity ("RFC") because the only non-exertional limitation was that she "would work better away from the general public."  Pl.'s Obj. at 10.  She argues that this finding ignored the functional limitations opined by every evaluator or treatment provider regarding Ms. Bauder's inability to handle stress, inability to sustain attention/concentration, and inability to understand, remember and carry out detailed or complex instructions.  In support of this point, Plaintiff identifies an August 6, 1997 assessment by Dr. Hyde, a DDS medical consultant, in which he found Ms. Bauder to be moderately limited in four separate categories: the ability to understand and remember

ORDER  7–

1    detailed instructions, the ability to carry out detailed instructions, the ability to maintain

2    attention and concentration for extended periods, and the ability to complete a normal

3    workweek and workweek without interruptions from psychologically based symptoms and to

4    perform at a consistent pace without an unreasonable number and length of rest periods.  Tr.

5    319-20.  In Dr. Hyde's "functional capacity assessment," he explains his conclusions that

6    "[d]ue to depression," Ms. Bauder "may have some limitation with concentrating for

7    extended periods and completing work week or with pace."  Tr. 321.

8          ALJ Battise does not mention Dr. Hyde by name, but ALJ Battise refers to testimony

9    by "doctors for the state agency," which substantively corresponds to the testimony of Dr.

10   Hyde.  Tr. 531-32.  Later in his decision, ALJ Battise states that he "do[es] not give

11   significant weight to the State Agency physicians' opinions" because they "were issued in

12   1996 and 1997, while the claimant was still undergoing in vitro fertilization treatment

13   without maximizing her medications" and "it was also prior to the diagnosis of lupus."  Tr.

14   544.  The Court concludes that ALJ Battise has provided specific and legitimate reasons for

15   not heavily weighing Dr. Hyde's testimony in his assessment of Ms. Bauder's RFC.  ALJ

16   Battise also provided specific and legitimate reasons for not heavily weighing the testimony

17   of Mr. Uslan, Dr. Kenyon, and Dr. Wynn, which otherwise might have corroborated Dr.

18   Hyde's testimony.  Tr. 542-43.

19         Plaintiff next asserts that ALJ Battise overlooked the statement from Karen Jackson

20   Forbes, a clinical mental health counselor.  Pl.'s Obj. at 5.  Ms. Forbes' letter of June 10,

21   1997, discusses Ms. Bauder's "daily nightmares, inability to cope with crowds, insomnia,

22   and extreme difficulty in coping with complex situations," which "results in a lack of

23   concentration, difficulty processing information and the need to reduce her activity

24   significantly."  Tr. 280.  Ms. Forbes further states that Ms. Bauder "is unable to cope with

25   stress."  Tr. 281.  Ms. Forbes recommends that Ms. Bauder "be qualified for Disability

26   Income due to PTSD, depression, infertility treatments and asthma."  Id.  ALJ Battise

1    summarized Ms. Forbes' statement, Tr. at 531, but ignored it when assessing Ms. Bauder's

2    RFC.  In November 2002, the Appeals Council indicated that although Ms. Forbes is "not an

3    'acceptable medical source,'" her statement regarding Ms. Bauder's "lack of concentration,

4    difficulty processing information and an inability to cope with stress," should be considered.

5    Tr. 566.

6        Accordingly, the Court DENIES the R&R recommendation to uphold ALJ Battise's

7    assessment of Ms. Bauder's Residual Functional Capacity, and REMANDS the case for

8    further consideration of Ms. Forbes' statement.  Specifically, the ALJ should determine

9    whether Ms. Forbes' statement – in particular her opinion regarding Ms. Bauder's "lack of

10   concentration" and "difficulty processing information" – is corroborated by any credible

11   medical opinion in the record and, if so, whether other non-exertional limitations should be

12   included in Ms. Bauder's RFC.

13                          **b.    Past Relevant Work**

14       Ms. Bauder objects that ALJ Battise and Judge Benton both overlooked the finding by

15   DDS in 1997 that Plaintiff is "incapable of performing any past relevant work."  Tr. 149.

16   The Commissioner responds that "[a] previous administrative decision, however, does not

17   bind an ALJ, who has the right to consider issues previously decided favorably for a

18   claimant, provided he gives the claimant adequate notice" pursuant to 20 C.F.R. §

19   404.946(a).[1]  Def.'s Resp. at 3.  This regulation provides that: "if evidence presented before

20   or during the hearing causes the administrative law judge to question a fully favorable

21   determination, he or she will notify [claimant] and will consider it an issue at the hearing."

22   20 C.F.R. § 404.946(a); see also Pl.'s Obj. Ex. A (HALLEX I-2-201 Regarding Issues

23   Before the Administrative Law Judge) (requiring an ALJ to "send advance notice to inform

24   the claimant that the issue(s) [previously decided in claimant's favor] will be considered at a

25

26   [1] Plaintiff incorrectly relies upon 20 C.F.R. § 404.946(2), which regards "new" issues not
     previously considered.  Pl.'s Reply at 3.

hearing").  The Commissioner argues that the May 23, 2003 "Notice of Hearing" pertaining

to the then upcoming June 26, 2003 hearing before ALJ Battise informed Ms. Bauder of the

"issues" that the ALJ would be considering, including "your ability to do the kind of work

you did in the past."  Tr. 628.  Plaintiff has failed to demonstrate that 20 C.F.R. § 404.946 or

the HALLEX provision require the ALJ to be any more specific than that.  The

Commissioner also notes that Ms. Bauder was put on notice that this issue would be

reconsidered after 1997 because this issue had twice been decided against her by ALJ Bauer,

in 1999 and 2001, and because this Court remanded the case in January 2001 with explicit

instructions "to develop the evidence regarding Plaintiff's past relevant work."  The Court

concludes that ALJ Bauer's decisions, this Court's January 22, 2001 Order, and the Notice

of Hearing sufficiently informed Ms. Bauder that Step 4 would be an issue considered by

ALJ Battise.

Ms. Bauder next contends that ALJ Battise had a duty to question her regarding her

research assistant position, and claims that if he had done so, he would have discovered that

in order for Plaintiff to be a research assistant, it is necessary to be a graduate student.  Pl.'s

Obj. at 2.  The Commissioner responds that this is an irrelevant argument because what

matters at steps four and five is the claimant's ability to perform the identified work, not

obtain it.  Def.'s Resp. at 2-3.  Plaintiff, in her reply, agrees with the Commissioner and

abandons this argument.  Pl.'s Reply at 2.

Ms. Bauder next contends that ALJ Battise failed to make findings of fact as to the

physical demands of the past relevant research assistant position, as Judge Benton has

recognized is required by SSR 82-62.  Pl.'s Obj. at 3; R&R at 13.  ALJ Batisse discussed the

physical demands, as follows: "The evidence in this case establishes that the claimant has

past relevant work as a research assistant.  The vocational expert at the hearing testified that

this work is usually performed at the light exertional level, suggesting that it involved lifting

ORDER   10–

twenty pounds occasionally and standing up to six hours in an eight hour day." Tr. 544.[2]

ALJ Battise then concluded that "[t]he claimant could clearly no longer perform this work as

it exists in the national economy." Id.  It is unclear how ALJ Battise simultaneously

concludes that she cannot perform this work as it exists in the national economy *and* that she

is able to perform her past work as a research assistant (Finding Nos. 8-10).  It is also unclear

how the vocational expert's testimony pertains to a part-time research assistant position.

ALJ Battise's decision does not discuss the number of hours per day or days per week

required by the part-time research assistant position.  ALJ Battise notes that the position was

"flexible in nature" and "did not require her to work any specific hours," Tr. 545, but there is

no discussion of the approximate number of hours per day or days per week required by the

position.  ALJ Battise has also failed to cite any evidence to support the "flexible in nature"

finding.

      Ms. Bauder further contends that ALJ Battise failed to make findings of fact as to the

mental demands of the past relevant research assistant position, as Judge Benton has

recognized is required by SSR 82-62.  Pl.'s Obj. at 3-5; R&R at 13.  ALJ Battise's decision

does not describe any evidence relating to the mental demands of the research assistant

position.  This is unacceptable, particularly in light of the Court's prior order in 2001 to

"develop the evidence regarding Plaintiff's past relevant work."  ALJ Battise could have, but

apparently did not, ask Ms. Bauder, her past employer, her co-workers, and/or other

knowledgeable persons about her past work as a research assistant.  See 20 C.F.R. §

404.1565.  To conclude that Ms. Bauder could perform her past work as a research assistant

without any information regarding the mental demands of the job is reversible error.

---

[2] ALJ Battise also noted that Ms. Bauder stated that "she did not have to carry more than ten
pounds occasionally."  Tr. 544.  This evidence was part of the record as of September 16,
1996.  Tr. 130-31.

1    Accordingly, the Court DENIES the R&R on the issue of Ms. Bauder's ability to

2    perform her past relevant work, and REMANDS the case for further development of the

3    evidence regarding the physical and mental demands of the part-time research assistant

4    position and Ms. Bauder's ability to perform those physical and mental demands given the

5    "significant fatigue" and her "severe" impairments recognized by ALJ Battise and supported

6    by the medical evidence.

7                    **4.   ALJ Battise's Step 5 Determination**

8    ALJ Battise did not reach Step 5 of the disability determination process because he

9    found Ms. Bauder not disabled under Step 4.  Because the Court remands for a hearing in

10   connection with Step 4, the Court does not reach Step 5.

11   **III.   CONCLUSION**

12   The Court ADOPTS IN PART and DENIES IN PART the R&R, docket no. 23.  The

13   Court ADOPTS the R&R's recommendation to uphold ALJ Battise's Finding No. 4

14   regarding Step 3, and ADOPTS the R&R's recommendation to uphold ALJ Battise's Finding

15   No. 5 regarding credibility.  The Court DENIES the R&R's recommendation to uphold

16   Finding Nos. 7-10 regarding Step 4, and REMANDS the case for further consideration of

17   Step 4 in accordance with this Order.

18   The Court FURTHER ORDERS that the hearing on remand take place **within 90**

19   **days** of the entry of this Order and that a decision be made **within 30 days** of the hearing.

20   IT IS SO ORDERED.

21   DATED this 25th day of October, 2006.

22

23                                      Thomas S Zilly

24                                      Thomas S. Zilly
                                        United States District Judge

25

26

ORDER   12–